Turney, J.,
delivered the opinion of the Court.
The decree of the Chancellor must be reversed.
A bill was filed by complainant in the Chancery *634 Court of Knoxville, to set aside two deeds of trust for fraud. The suit is abandoned, as to the first deed. The second deed, which is attacked, was made 17th of August, 1866, embracing the property conveyed by the first deed, and conveys additional property providing for the payment of a debt of fifteen hundred dollars, cared for in the first deed, and securing, amongst others, a debt due to Mrs.. Eifler, the mother of Nicholas, in three notes, amounting to about $4,675, without interest.
The grounds insisted on by complainants are, that Mrs. Eifler is the mother of the maker; that, one of the notes, written in German, is made payable to Mrs.’ Scherf, the sister of Nicholas, but secured to Mrs. Eifler; that the bill expressly charges fraud; that there is, in fact, no consideration for the notes, and that they .were made to relations to hinder and delay creditors; that Mrs. Eifler and her son conflict in their statement of the consideration; that the deed has not the proper amount of revenue stamps.
The relationship of the parties may be considered, on an inquiry into the motives prompting the maker of the deed; it is merely a circumstance that may or may not be a badge of fraud, but unless well supported by other proof, is no evidence of a fraudulent purpose. The fact that one of the notes is payable to the sister, may be disposed of by the same remark. This is explained in the answer in the responsive statement, that the note was written in German; that Mrs. Eifler and her children are poorly acquainted with the English language, and thereby led the draftsman of the deed into *635 error. This is the legitimate meaning of the answer, and it is sustained by the' facts.
The mistake of the name in the deed is one for which a Court of Chancery would reform, by declaring it to be for the benefit of Mrs. Scherf, to the amount of her note. As to the discrepancy in the answers, we are unable to see that it exists in fact. Mrs. Eifler says the consideration. of the note is loaned money. Nicholas says it was, he might say, loaned money, but states the facts to be, that he borrowed some money of his mother, and she sent him goods, for which ' he paid; he executing his note, including the money loaned, and the money advanced for goods — the one stating directly, and the other circumstantially, that it was loaned money, the results being identical. No proof is adduced on either side, as to the consideration. It was not necessary for the respondents to make any, after their direct denial, until complainant had first proven some act or fact conducing to ■ show fraud.
It is insisted in argument, that, as two of the notes bear interest at ten per cent., therefore the deed is void. This fact only appears by exhibition of the note to the answer. There is no allegation that they are invalid for that cause.
This could not in any event, affect the deed, except' as to the notes bearing the unlawful interest; and, in the view we take of the case, cannot affect it as' to them further than the excess of the usury. Complainants, and not Mrs. Eifler, are the moving actors in the ■ suit; and, if the original consideration is as claimed, loaned money, and there appears no fraudulent purpose *636 to hinder and delay creditors, complainants, as to the notes, stand as would have stood Nicholas Eifler, were he asking the aid of a Court of Chancery to have said notes delivered up and cancelled. Nicholas being insolvent, and having made a deed in trust, this fund belongs to one or the other set of creditors. The party bringing the suit, and claiming to be entitled to it, must come under the rules governing, in case Nicholas were suing.
The complainants, for one ground, resist the right of Mrs. Eifler, because a statute makes void, contracts carrying more than six per cent. In discussing this question, Judge Story, in his work on Eq. Jur., § 301, says: “In cases of usury, this distinction has been adopted by courts of equity. All such contracts being declared void by the statute against usury, courts of equity will follow the law in the construction of the statute. If, therefore, the usurer or lender come into a court of equity, seeking to enforce the contract, the Court will refuse any assistance, and repudiate the contract. But, on the other hand, if the borrower comes into a court of equity, seeking relief against the usurious contract, the only terms upon which the Court will interfere are, that the the plaintiff will pay the defendant what is really and bona fide due to him, deducting the usurious interest; and if the plaintiff does not make such offer in his bill, the defendant may demur to it, and the bill will be dismissed.”
The ground of this distinction is, (says the author) “that a Court of Equity is not positively bound to in *637 terfere in such cases by an active exertion of its powers, but bas a discretion on the subject, and may prescribe the terms of its interference; and he who seeks equity at its hands may well be required to do equity; and it is against conscience that the party should have full relief, and at the same time pocket the money loaned, which may have been granted at his own mere solicitation, for then a statute made to prevent fraud and oppression, would be made the instrument of fraud. But in the other case, if equity should relieve the lender who is plaintiff, it would be aiding a wrong doer, who is seeking to make the Court the means of carrying into effect a transaction manifestly wrong and illegal in itself.
Applying these principles to the case in hand, complainants being the movers, and substituted to the rights of Nicholas, can only be relieved to the extent of the usurious interest.
Upon the question of the sufficiency in amount of the stamps affixed to the deed, if the acts of Congress declaring, “That it shall not be lawful to receive any instrument, document or paper required by law to be stamped, unless stamps of the proper amount shall have been affixed and cancelled, and declaring such instrument void, and that they shall not be used in evidence, is • the law,” then this deed in trust is void.
The several States of the Union became entitled on the 4th July, 1776, to all the rights and powers of sovereign States, as respects their internal regulations. McIlvaine v. Cox, 4 Cr., 209.
The States are sovereign within their own limits, *638 and foreign to each other, regarding them as local governments. Bank U. S. v. Daniel, 12 Pet., 33.
The rights of the crown devolved on the States by the revolution, and were confirmed to them by their treaty of peace in their sovereign capacity. Bald., 60.
The provision of U. S. Stat., of 1866, that no document not duly stamped, shall be used as evidence in any court, until the requisite stamps shall have been affixed thereto, applies only to the courts of the United States. Carpenter v. Sneling, 97 Mass, 452; Lynch v. Morse, Id., 458.
The courts of the States do not exist by the authority of the United States, or by its ‘permission, and are not objects over which its sovereign power extends, except, perhaps, for the purpose of protection. It does not possess over them, even the incidental power of taxation.
The people of the States possess all the powers of their original unlimited sovereignty, except such as have been delegated by them to the Government of the United States, or are prohibited to the States by the Constitution. Union Banh v. Hill et als., 3 Cold., 325.
There has been no delegation by the States to Congress, of power or authority to legislate for the internal regulation of the States, nor are the people of the States prohibited by the Constitution from creating and regulating the courts of the States and declaring the rules for their government. The Legislature of the , State is the only power which can enlarge or contract the rules of evidence or create and enforce new rules in *639 the courts of the State. If Congress may, by its enactments, make or change the rules of evidence as applicable to the courts of the States in any one particular it may in all things. It may totally abolish existing rules of evidence and practice and substitute others new and wholly different. If it may say what shall and shall not be a muniment of title, as it has proposed to do in the acts in review, it may as well prescribe the qualification for officers of the State, created by the Legislature of the State. In short, there is no limitation to its powers of legislation for the. States, for each, according to its political complexion, and the favor or disfavor of Congress. From such Congressional interference, consolidation and centralization must ensue, the rights of the States be destroyed and their sovereignty exist only in history.
It follows, stamps are not necessary to the validity of a paper as a muniment of title nor to its competency as evidence in the courts of the States.
The Chancellor declared the deed void. His decree is reversed, and the bill dismissed.